# Turner v. Flinn.

### *Bill in Equity for Foreclosure of Mortgage.*

1. *Rights of innocent sufferers by wrongful act of third person, as between themselves.*—When one of two innocent persons must suffer from the tortious act of a third, he must suffer the consequences who gave the aggressor the means of doing the wrongful act.

2. *Same; equitable estoppel.*—Where a mortgagee of lands indorses on the mortgage a receipt for the secured debt before its maturity, and intrusts it to the possession of the mortgagor, pursuant to an agreement between them; and the mortgagor, being in possession of the lands, sells and conveys them to a third person, to whom he also shows the mortgage and indorsement thereon; the mortgage can not be established and enforced against such purchaser, after he has paid the purchase-money without notice of the agreement.

APPEAL from the Chancery Court of Lowndes.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 21st May, 1880, by Mrs. Rebecca Turner, against William R. Flinn, Robert Flinn, and Henry Jones; and sought to foreclose a mortgage on a tract of land. The mortgage, a copy of which was made an exhibit to the bill, was dated the 4th October, 1871, and was executed by said W. R. Flinn alone; but the note which it was given to secure was signed by said W. R. Flinn, Henry Jones, and Bunbury Flinn, as joint makers, and was payable on 1st November, 1872. The note was renewed several times, and the name of said Bunbury Flinn having been dropped, the balance due on the secured debt was evidenced by the joint note of said W. R. Flinn and Henry Jones, which was made an exhibit to the bill. The mortgage was in the possession of said W. R. Flinn when the bill was filed, and that fact was alleged in the bill; but it was alleged, also, that said mortgage had never been paid, satisfied, discharged, or surrendered, and that it was still a subsisting security for the balance due on the original debt. Robert Flinn was joined as a defendant, under an allegation that he was in possession of the lands conveyed by the mortgage, "claiming by and under some contract of lease or purchase from said W. R. Flinn." Each of the defendants filed an answer, and each denied that the mortgage was a valid and subsisting security; though W. R. Flinn and Jones admitted that the note made an exhibit to the bill showed the balance still due on the original note secured by it. Robert Flinn alleged that the mortgage had been satisfied and discharged long

[Turner v. Flinn.]

before he purchased the lands from W. R. Flinn; that at the time of his purchase, in February, 1877, and before he paid the purchase-money, W. R. Flinn informed him that there had been a mortgage on the land in favor of Mrs. Rebecca Turner, but said that it had been discharged and cancelled, and produced and exhibited to him the original mortgage, with Mrs. Turner's receipt indorsed on it; and he claimed to be entitled to protection as a *bona fide* purchaser for valuable consideration without notice.

The complainant's receipt, indorsed on the mortgage, was in these words: "Received the within amount, November 17th, 1871." In reference to this receipt, the answer of W. R. Flinn contained these allegations: "After the execution and delivery of said mortgage, complainant came to respondent, and told him that she desired to cancel and surrender said mortgage—that she had plenty of security without it; and thereupon she cancelled said mortgage in writing, and surrendered it to respondent, and he has held it ever since." The complainant herself thus testified in reference to this matter: "I have not seen the original mortgage since November, 1871, when I placed it in the possession of said W. R. Flinn. At that time, one D. H. Hill, pretending to have some claim against me, brought suit against me, and garnisheed W. R. Flinn and Henry Jones, who were indebted to me as aforesaid. Thinking this claim an unjust one, and being unwilling to have my claim against said Flinn and Jones complicated in the case, I made an agreement with said W. R. Flinn, who acted for himself and Jones, in substance as follows: I agreed to cancel the said mortgage, and deliver it to W. R. Flinn, who on his part agreed that the cancellation was to be considered in reality as a nullity, as no money had been paid on the secured debt, and no other consideration for the cancellation was given. I complied with my agreement, by cancelling the mortgage, and putting it in his possession; and said W. R. Flinn agreed with me, at the same time, that he would return the mortgage to me whenever Hill ceased to prosecute his pretended claim against me." W. R. Flinn thus testified as to these matters: "Complainant came to me on the 17th November, 1871, and said that Buell (?) had threatened to sue her for a debt she owed him; that she had security enough for the debt I owed her, exclusive of the mortgage on the land, and that she would cancel the mortgage, so that I could take it cancelled to Buell, and thereby prevent him from garnisheeing me for her debt. She did cancel it, and told me she had no claim on the land, and that I could so state to others. I did show it to Buell and others, and told them that it had been cancelled. I told said Robert Flinn, at the time of his purchase, that the mortgage had been cancelled,

[Turner v. Flinn.]

and exhibited the mortgage to him, with the complainant's receipt thereon indorsed." It was admitted that a discharge or satisfaction of the mortgage had never been entered on the record.

On final hearing, on pleadings and proof, the chancellor dismissed the bill; and his decree is now assigned as error.

R. M. WILLIAMSON, for appellant.—The indorsement on the mortgage is not a release, or acknowledgment of satisfaction, but is simply a receipt, and is open to explanation, at least between the parties.—1 Brick. Digest, 860, §§ 809–10. It is fully explained, and it is shown that a greater part of the mortgage debt is still unpaid, leaving the mortgage a valid security for it, unless the purchaser can claim protection against it. The possession of the secured note, by the mortgagor, would raise the presumption that it had been paid; but no such presumption arises from his possession of the mortgage, which had been duly recorded.—*Harrison v. Railroad Co.*, 19 N. J. Eq. 488; *Paxheimer v. Gunn*, 24 Mich. 372. The mortgage having been recorded, and no entry of satisfaction made of record, the purchaser was put on inquiry; and the receipt ought to have excited inquiry, since it was given long before the maturity of the debt, and had never been followed up by an entry of satisfaction on the record. The purchaser admits that he was informed there had been a mortgage on the land, and a man of ordinary prudence would have made further inquiry before completing the contract; failing to make any inquiry, he is chargeable with notice of all facts which inquiry would have developed.

GUNTER & BLAKEY, *contra*.—The facts make out a clear case of equitable estoppel.—*Dickerson v. Colgrove*, 10 Otto, 578; *Hendricks v. Kelly*, 64 Ala. 388; *Baker v. Humphrey*, 11 Otto, 494; *Cincinnati v. White*, 6 Peters, 431; *Brown v. Wheeler*, 17 Conn. 353; *Lasselle v. Barnett*, 12 Amer. Dec. 217. Receipts and discharges in writing must have effect according to the intention of the parties.—Code, § 3039; *Hart v. Freeman*, 42 Ala. 567.

BRICKELL, C. J.—The undisputed fact is, that the appellant deliberately indorsed, upon the face of the mortgage she now seeks to foreclose, an acknowledgement of its satisfaction, and then intrusted it to the possession of the mortgagor. It is a fact fully proved, that while in possession of the lands, the mortgagor made a sale of them, for a valuable consideration, to the appellee, Robert Flinn, to whom the mortgage, with the acknowledgment of satisfaction, was shown, and who paid the purchase-money, and received a conveyance, without notice, and

[Crowder v. Morgan.]

in ignorance of the agreement between the appellant and mortgagor, upon the faith of which she now avers the acknowledgment of satisfaction was made, and possession of the mortgage intrusted to the mortgagor. If the appellant came into court with clean hands, she could not be relieved. The law simply utters the suggestion of common sense and justice, in declaring that, "when one of two innocent persons must suffer from the tortious act of a third, he who gave the aggressor the means of doing the wrong must bear the consequences of the act."—*Bank of Kentucky v. Schuylkill Bank*, Parsons' Select Eq. Cases, 248.

Let the decree of the chancellor be affirmed.