[Trammell, et al. v. Mower.]

# Trammell, *et al. v.* Mower.

### *Bill to Cancel Mortgage With Cross-Bill for Foreclosure.*

(Decided May 15, 1913.   62 South. 528.)

1. *Mortgages; Priority; Estoppel of Mortgagor's Vendor.*—Where, by failing to take any interest in, or to exercise any supervision over proceedings to form a corporation to own and market the mineral right in their lands, failing to attend stockholders' meetings, etc., the owners of the land permitted the control of the corporation to fall wholly into the hands of their agent, who caused himself and his friends to be elected to all the offices in the corporation, and the corporation by proper resolution mortgaged the mineral rights in the lands to a bona fide mortgagee who took after the usual examination of title, etc., the former owners cannot claim as against such mortgagee, that the mortgage should be canceled because the title of the corporation to the land was obtained by fraud.

2. *Corporations; Mortgages; Execution.*—A mortgage given by a corporation on its real estate is properly executed and binding upon the corporation where its name is signed thereto by its president as president, and his signature attached by the secretary, and the official seal is attached, and the mortgage recites that it is executed pursuant to a resolution of the board of directors, and is acknowledged by the corporation before a notary public, through its president and secretary.

3. *Same; Stockholders Meeting; Business; Validity.*—Where all the stockholders of a corporation receive notice of a meeting at a specified time and place to consider the question of mortgaging its real estate to secure funds, and the meeting was held at the time and place specified, and all the stockholders voted in person or by proxy in favor of authorizing a mortgage to secure a loan, and the corporation subsequently properly executed the mortgage and secured such loan, it became bound thereby.

APPEAL from Blount Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by R. F. Trammell and others, against Calvin R. Mower, to cancel a mortgage for fraud, with cross-bill by respondent to foreclose said mortgage. From a decree granting the relief prayed in the cross-bill, complainants appeal. Affirmed.

WARD & WEAVER, for appellant. The rule of law applicable to non est factum applies with equal force to chancery proceedings.—*Noble v. Gillam,* 33 South. 861. The onus is on the party offering the paper to introduce affirmative testimony showing the authority of those signing it.—*M. J. & K. C. v. Hawkins,* 51 South. 37. It was not competent by parol testimony to show the contents of the minutes as they expressed a mere conclusion of the witness, and could not take the place of the court in determining whether the minutes were in proper form or not. Counsel discuss the evidence and insist that it is such that this court should enter a decree denying the mortgagee the right to subject appellant's land to the payment of a debt, and also a decree declaring said mortgage to be fraudulent and cancel the same.

E. O. McCORD, for appellee. The complainants are estopped under the facts in this case from asserting against the mortgagee the fraud in the organization of the corporation, as they failed to take proper action in the premises, and permitted the mortgagee to be misled. *Snider Sons v. Troy,* 91 Ala. 224; *Bibb v. Hall,* 14 South. 98. The acknowledgment is in such form as makes the mortgage good prima facie.—Acts 1911, p. 31. The mortgage was executed properly and casts the burden on appellant to show want of authority in the president to execute it.—139 Ala. 310. The signature was properly proven.—*Arrington v. Arrington,* 122 Ala. 510; *Branch v. Smith,* 114 Ala. 463. The evidence sufficiently showed a proper meeting of the stockholders, a resolution authorizing the mortgage, and the mortgage was good.—Sec. 3481, Code 1907; *Nelson v. Hubbard,* 11 South. 428. Under the facts in this case the appellants should have tendered the amount due on the mortgage,

and until they do so their pleas were not good.—*Bank v. Alexander*, 152 Ala. 585; *Mortgage Co. v. Sewell*, 92 Ala. 63; *So. B. & L. Assn. v. Stable Co.*, 29 South. 654. The law subserves the vigilant and not the blindly confiding.—*Hall & Farley v. Ala. T. Co.*, 56 South. 241; 56 Ala. 344. Where disaffirmance is sought on the ground of fraud, it must be done at the earliest practicable moment after the discovery of the fraud.—*Stephenson v. Allison*, 123 Ala. 447; *Harrison v. Ala. Mid.*, 144 Ala. 246; *Cole v. Bir. U. Ry. Co.*, 143 Ala. 426; *Salmon v. Winn.* 153 Ala. 558. Where one of two innocent persons must suffer by the acts of a third party, he who enabled the third party to occasion the loss must bear it.—*Young v. Lehman*, 63 Ala. 519; *Noble v. Moses*, 74 Ala. 620.

DE GRAFFENRIED, J.—Stated roughly, but with sufficient exactness to give pith to this opinion, the facts of this case are as follows:

The complainants, R. F. Trammell, Peter Clements, and S. H. Murphree, who are farmers with practically no knowledge of business affairs, but who, nevertheless, attend to their affairs and are not non compos mentis, owned in fee about 400 acres of land. This land is valuable, not only for farming purposes, but also for its minerals and especially for its coal. Of this latter fact the complainants were fully informed, and it appears that they were desirous of selling the mineral rights in their said lands. They finally fell into the hands of a man by the name of Wood, and, according to the complainants' version of the story, were induced by Wood to agree to the formation of a corporation with a capital stock of $7,000, all of the stock of which was to belong to complainants except one share, which was to be issued in the name of Wood in order that he might

appear among the list of stockholders and act as one of the officers of the corporation. The mineral interests in the lands were to be conveyed to said corporation in consideration of said $7,000 capital stock and this mineral interest was to be the only asset of the corporation. We think it probable that Wood in his own name, or in the name of some one for him, obtained an option on the said mineral interest at the sum of $7,000, and that this was done while the negotiations with reference to the formation of the corporation were in progress.

Finally, a corporation known as the Altoona Coal & Coke Company was organized, not in Blount county, but in Jefferson county. In the articles of incorporation the capital stock of the corporation was fixed, not at $7,000, but at $28,000; $7,000 of said capital stock being preferred stock and $21,000 being common stock. Certificates for 69 shares of the preferred stock of the face value of $100 each were issued and delivered to complainants, and 1 share of this preferred stock of the face value of $100 was issued and delivered to said Wood. The common stock, representing $21,000 of said capital stock, was issued as fully paid up to the said Wood, R. H. Coffee, George F. Jenkins, and T. F. Wood in consideration of $1,400 paid in cash into the treasury of said corporation and the transfer of the option previously obtained by said Wood on the mineral rights in complainants' said lands. None of the complainants were made officers of the corporation, they attended none of the meetings of the stockholders, and did nothing in or about the matter, except, indeed, to sign such papers as were sent to them by said Wood for their signatures. They appear to have fully trusted Wood, and they claim that for a long period after the Altoona Coal & Coke Company was formed they were led by Wood to believe that its capital stock was only $7,000, that they owned

all of it except one share, and that the corporation was formed and the development of the property and its exploitation by the corporation were being had for the purpose of effecting its sale at a sum which would net complainants said $7,000. There was nothing, however, on the face of any of the articles of incorporation of said Altoona Coal & Coke Company which could in any way lead a stranger to a reasonable belief that complainants had in the formation of said corporation been overreached by the said Wood, or that they were not fully apprised of all the details which led up to and resulted in the formation of said corporation. In other words, there was nothing on the face of any of the papers putting a stranger upon inquiry as to any of complainants' rights.

After the formation of the corporation, which was empowered "to buy, own, hold, lease or sell lands, * * * engage in mining coal and iron ores, etc., * * * to build, own, purchase or lease all railroads, vessels, etc., * * * as may be necessary or needful for the proper conduct of the business, etc., * * * and to do any and all other things in the transaction of such business not inconsistent with the laws of Alabama," the mineral interest above referred to was, by sufficient legal conveyance, conveyed to the said corporation and the corporation took possession thereof. At the time of the organization of the corporation and during the period covered by this controversy the general laws of the state provided—as they now provide—that a mining corporation possessed the power "to borrow money, issue notes, bonds, or other negotiable paper, or mortgage, pledge, or otherwise transfer or convey its real and personal property to secure the payment of money borrowed or any debt contracted," etc. Acting under the powers thus conferred by our general laws,

the Altoona Coal & Coke Company on July 29, 1907, executed and delivered to the respondent Mower a mortgage upon the above-described mineral interests to secure notes aggregating $5,000.   The said Wood had been —without the knowledge or consent of complainants if their contention about this matter is correct—elected president of said corporation, and this mortgage was executed to cover a loan which, through negotiations conducted by Wood as its president, the respondent had agreed to lend the corporation to aid it in the development of its properties.   The respondent Mower is a nonresident, and he had no acquaintance with the complainants, but he knew Wood, the president, personally.   It was understood, when the notes and mortgage were executed and delivered, that all of the $5,000 was not to be paid by Mower to the corporation in one sum, but only in installments as the corporation should need the money in its development work.   In fact, it appears that Mower required that he should be kept informed as to the progress of the development work, how the money obtained from him was being expended, etc., in order that he might see that the money so paid out by him was, in fact, enhancing the value of the property and increasing his security.   Before Mower accepted the mortgage, he employed a firm of lawyers to investigate the title to the property, see to the proper execution of the papers, and to advise him if the mortgage, when executed and delivered, was binding upon the corporation. The mortgage was accepted by him upon the advice of such counsel as to its legal sufficiency and validity, and so far as we are able to discover, Mower, in this transaction, in all that he did, acted in perfect good faith both in law and in fact.   After Mower, under his agreement, had advanced to the corporation the sum of $1,200, a large part of which seems to have been used in devel-

opment work, he was advised by Wood that the stock-holders of the corporation had fallen out, and that no further part of the $5,000 would be used or drawn for. Mower, therefore, by virtue of his $5,000 mortgage, only claims a lien upon the property for $1,200, the interest and an attorneys fee which is provided for in said mort-gage.

1. After Mower had acquired all of the rights above stated, the complainants filed a bill of complaint in the chancery court of Jefferson county against the said Wood and the said Altoona Coal & Coke Company and its other stockholders setting up that the conveyances from them to their mineral rights in said lands to said Altoona Coal & Coke Company was obtained by fraud, and praying that such conveyances should be declared void, and that they should be canceled on account of such fraud. The prayer of this bill was granted, and the said conveyances were canceled and declared void. The said Mower, however, was not made a party to that proceeding, and his rights remain unadjudicated.

2. The present bill was filed by complainants (after the rendition of the above decree) against the said Mow-er, for the purpose, in effect, of having his said mortgage canceled as a cloud upon their title. The complainants in their bill do not offer to pay any part of said mort-gage indebtedness. Mower filed an answer to the bill, setting up the above facts, and, making his answer a cross-bill, prayed that his mortgage be foreclosed. The complainants in the original bill answering the cross-bill, filed, first, a plea that the mortgage was never in fact executed; second, that the mortgage was executed without authority; and, third, that, when the mortgage was executed and delivered to Mower, "he had notice or knowledge of said fraudulent scheme" to defraud com-plainants of their lands, "or he was in possession of

facts by himself or his agents which put him on inquiry," etc.

From what we have already said, it is apparent that in our opinion there is nothing in the third defense. While Wood may have by fraudulent representations induced complainants to convey their lands to the Altoona Coal & Coke Company, the failure of the complainants to exercise ordinary business precautions in the matter placed the title to the lands in such a situation as to lead a member of the business public who did exercise every necessary business precaution for his own protection to innocently lend money to said corporation, and to accept as security a mortgage on said lands. Certainly complainants, who were, it is true, trustful of Wood, but plainly negligent in the conduct of their own business affairs, cannot be allowed to set up the situation which their own neglect has placed them in to defeat the rights of one who acting in perfect good faith has advanced money to a corporation which was organized by complainants' own business associate and which it was the business of complainants to know was organized in accordance with the terms agreed upon with that business associate. "When one of two innocent persons must suffer from the tortious act of a third, he must suffer the consequences who gave the aggressor the means of doing the wrongful act."—*Turner v. Flinn*, 72 Ala. 532.

3. The name of the corporation was signed to the mortgage by said Wood as its president. His signature was attested by the secretary of the corporation, and the mortgage was sealed with the official seal of the corporation. The mortgage concludes as follows: "The effectuation of this loan from said Mower, and the execution of this mortgage to secure the same, is authorized by the stockholders of said company at a meeting

held by them at the office of the company in the banking house of Steiner Brothers, Birmingham, Alabama, on the 29th day of July, 1907, and at a meeting of the board of directors of said company held at the said office of said company on the 29th day of July, 1907. ＊ ＊ ＊ In witness whereof the said Altoona Coal & Coke Company, a corporation, by its president T. F. Wood, duly authorized thereto by resolution adopted by said board of directors at their said meetings, and its secretary, Robt. H. Coffee, doth hereto affix its corporate name and attach its corporate seal, at Birmingham, Alabama, on the day and date above set forth." The mortgage was acknowledged by said corporation by and through said Wood and Coffee as its president and secretary before a notary public of Jefferson county. If the execution of the mortgage was authorized by the corporation then, of course, it was properly executed.—*Graham v. Partee, et al.,* 139 Ala. 310, 35 South. 1016, 101 Am. St. Rep. 32.

4. The evidence discloses that Mower agreed to make the loan provided his attorneys advised him that the title was perfect, and that the mortgage was duly executed after having been properly authorized. Mower's attorneys satisfied themselves that the title was good and thereupon notified the president of the corporation that when the execution of the mortgage had been duly authorized by the stockholders at a meeting held for the purpose, and had been, pursuant to such authority, properly executed the loan would be closed. Thereupon a day was set and a place fixed for this meeting of the stockholders, and Mower's attorneys themselves prepared the written notices of said meeting which were to be issued and served upon the stockholders. All of these notices were alike, and one of them appears in the note of testimony. This notice was legally suffi-

cient. It was dated July 12, 1907, and notified each stockholder—among them complainants—that a meeting of the stockholders was called to meet at the office of the corporation at a named place in the city of Birmingham "on the 20th day of July, 1907, at the hour of one p. m., for the purpose of considering the question of mortgaging the real estate of the corporation to secure funds to open up and operate the mineral properties of said corporation and providing for the execution of said mortgage." Each of the complainants claims that he did not receive a copy of this notice, but we are of the opinion that this claim is clearly overcome by the testimony. We are of the opinion that each of the complainants not only received a copy of that notice, but that each of them signed an agreement for the meeting to be held on the above day for the above purpose and also, in writing, appointed Wood, the corporation's president, to act for him as his proxy at said meeting. Unquestionably the meeting was held at the time and place appointed. Wood acting for himself and the three complainants as their proxy voted for a resolution authorizing the corporation to borrow the $5,000 and to execute the mortgage. All the other stockholders were present, and also cast their votes for the resolution. Wood died before the evidence in this case was taken, and after his death his residence was destroyed by fire. The books of the corporation were kept after Wood's death in his residence, and they burned along with the house in which they were kept. We are able to gather the above facts from the unquestioned legal evidence in this case, and it seems to us, therefore, that there is sufficient legal evidence in this case to authorize this court to conclude that the execution and delivery of the mortgage was duly and legally authorized by the stockhold-

ers of the corporation at a meeting held for that purpose.

Our findings of fact are in accord with the findings of the chancellor, and in our opinion the chancellor properly granted the respondent Mower the relief for which he prayed in his cross-bill.

The decree of the court below is affirmed.

Affirmed. All the Justices concur, except DOWDELL, C. J., not sitting.