STATE BANK OF COOPERSTOWN, NORTH DAKOTA, a Cor-
     poration, Respondent, v. ANDREW. JACKSON NEWELL and
     Borghild Newell, his Wife, Appellants.

(212 N. W. 848.)

**Husband and wife — delivery of deed — good consideration.**

   1. A deed of real property from a husband to his wife was properly executed

---

Annotation.—(2) As to mode and sufficiency of pleading estoppel, see 10 R. C. L.
844; 6 R. C. L. Supp. 623.

   (3) Silence of married woman as estopping her to claim interest in real property,
see annotation in 50 A.L.R. 956.

and handed to the wife by the husband, who stated at the time that he was deeding the land to her, and that her father was canceling the debt which the husband owed her father, such statement being corroborated by the father; the wife accepted the deed and gave it to her father who put it in his safe. It is *held* that there was a good consideration for the deed and a delivery free from any condition.

**Estoppel — must be pleaded — when allegations are sufficient.**

2. Estoppel must be pleaded, but when the allegations of the pleading amount to ɪ estoppel, it is sufficient, although the estoppel is not pleaded in so many words or the pleading specifically designated as such.

**Husband and Wife — estoppel from asserting wife's claim to real estate.**

3. Where a husband deeded his land to his wife, who had the deed put away in a safe where it remained for seven years without recording, both husband and wife remaining silent about the deed, and in the meantime the husband being in control of the land as the apparent owner, and where he, with the wife's knowledge, borrowed large sums of money from a bank on the strength of his apparent ownership, they are estopped from asserting that the title of the wife to said real estate is superior to plaintiff's judgment lien.

Opinion filed March 15, 1927.

Estoppel, 21 C. J. § 2 p. 1060 n. 8; § 8 p 1060 n. 14; § 10 p. 1061 n. 16; § 248 p. 1242 n. 92; § 260 p. 1248 n. 52, 54. Husband and Wife, 30 C. J. § 272 p. 690 n. 27; § 274 p. 692 n. 75; § 486 p. 830 n. 74.

Appeal from the District Court of Griggs County, *Englert,* J. Modified and affirmed.

*Nestos, Herigstad, & Stenerson,* for appellants.

"A grant cannot be delivered to the grantee conditionally." Comp. Laws 1913, § 5497; Ucland v. More Bros. 22 N. D. 283, 133 N. W. 543; Leonard v. Fleming, 13 N. D. 629, 102 N. W. 308.

"As an estoppel in pais may operate to exclude the truth, it should be pleaded with certainty in every particular, and the facts should be set forth with great particularity and precision, leaving nothing to intendment." 10 R. C. L. 844. See also Smith v. Clever, 25 S. D. 351, 126 N. W. 589; McQueen v. Bank of Edgemont, 20 S. D. 378, 107 N. W. 208.

"One relying on an estoppel must have exercised such reasonable diligence as the circumstances of the case require." 21 C. J. 1129, 1130, with citations thereunder, also Rihner v. Jacobs, 79 Neb. 742, 113 N. W. 223.

"In order to constitute an estoppel it is not sufficient to show that the language, acts or conduct of one might have misled a party to his prejudice; but it must affirmatively appear that such party was in fact misled or induced by such acts, conduct, or language to do something that he would not otherwise have done except for such acts, language, or conduct." McQueen v. Bank of Edgemont, 20 S. D. 378, 107 N. W. 208.

*Conmy, Young & Burnett, John Sad,* and *M. W. Duffy,* for respondent.

"An issue whether a deed was delivered presents a question of fact to be determined by the circumstances surrounding the particular transaction. Intention of the grantor to pass title is essential to a valid delivery of a deed." Piercy v. Piercy, 124 Pac. 561.

"The burden is upon the grantee to clearly show a delivery of the deed for his benefit, and that such delivery was made." O'Brien v. O'Brien, 125 N. W. 307.

"A conveyance made by a husband to his wife in order to defraud his creditors will be set aside at her suit, though the land was originally bought with the wife's money, where she has allowed the title to stand in her husband's name, for the purpose of giving him credit." Cohoon v. Kineon, 22 N. E. 722.

"A grossly careless or negligent concealment or withholding of a deed from record, with no intent to defraud, may give the grantor a fictitious credit, and mislead those who actually extend credit on his apparent title, and, in such case, the grantee would be guilty of constructive fraud in attempting to assert his title against such creditors, and would be estopped by his negligence to do so to their prejudice." Smith v. Cleaver, 126 N. W. 589.

"Covenants in a mortgage are of the same effect as those in a deed." Summers v. Wagner, 21 N. D. 531, 131 N. W. 797.

BURKE, J. This is an action to set aside a deed executed by the defendant A. J. Newell on the 1st day of October, 1917, in which he conveyed to the defendant, Borghild Newell, his wife, the SE¼ of section 2 and NE¼ of section 11, township 145, range 58 in Griggs county, North Dakota. The trial court found the facts and conclusions of law favorable to the plaintiff and from judgment thereon defendants

appeal for trial de novo in this court. The defendant A. J. Newell inherited the said land free from encumbrances. It was and is a valuable farm having a seven-room house, a large barn and outbuildings valued by the defendant, A. J. Newell in an application for a loan in 1922, at $6,000, upon which there was $4,000 insurance, and the land exclusive of the buildings was valued in the same instrument at $19,200. The defendants had grown up at Cooperstown, or in the vicinity, and were well known, highly respectable, and honest. They married March 20, 1916, and when in Cooperstown they lived with Mrs. Newell's father, John Oie, who was in the real estate business at that place. The defendant, A. J. Newell, had been for some time a student at the Northwestern University, Chicago, and continued his studies at that place after marriage. He borrowed money from his father-in-law, John Oie, to pay expenses until in the fall of 1917 he owed his father-in-law $3,000. Just before the execution of the deed in question, he received notice to report for service in the U. S.. Army. In a conversation with his father-in-law, John Oie, he stated that he had been called to service in the war, and might not return, that he could not pay him what he owed him and that he wanted to deed the land to his wife, and his father-in-law said, "If you deed the land to her I will cancel your debt to me, and that will be a consideration for the deed." The deed was then drawn, witnessed, acknowledged, and A. J. Newell testifies, "I took the deed home and gave it to my wife at my father-in-law's residence. I told her I had deeded the land to her and I was going to get credit for what I owed her father." Mrs. Newell said, "that her husband came home and gave her a piece of paper. I asked him what it was and he said I deeded the farm to you; he said he had been called into the service and he wished to deed the land to me, and that my father would cancel his debt. I talked with my father and he said as long as the land was deeded to me he would make a gift to me of the debt. I gave the deed to my father." The father-in-law was present at the time, and he testified that Mrs. Newell gave him the deed, for safe-keeping and he put it in his safe and forgot about it; that he gave back the Newell notes he had, and credited Newell on his books for the balance.

Newell was permitted to continue his studies in dentistry and did not go to war. In the meantime, he borrowed money from the plaintiff

bank without security and after graduation he began the practice of his profession in Minneapolis, and from there he moved to Cooperstown where he practiced for some time. While in Cooperstown the plaintiff wanted to sell him some building lots and he told Mr. Blackwell, cashier of the plaintiff bank, "that he did not have the money to pay for the lots, and Blackwell said he would extend credit to me and that I could buy the lots, so I borrowed $1,500 and bought the lots. I never had any trouble borrowing money at the bank. The last loan was made in May, 1920." On the 1st of March, 1922, the loans made by the bank to Newell amounted to $5,811.60. In January, 1922, Newell went to the plaintiff bank and told Blackwell the cashier, that he wanted to make a loan and pay the bank, as he thought that the rate of 10% was too high, and that Mr. Blackwell referred him to Mr. Lunde of the Farm Loan Company, of Cooperstown, and through Mr. Lunde he borrowed $5,000 on a farm. Out of this amount he paid the plaintiff $4,311.69, paid the commission, and still owed the bank $1,500. Newell moved to Chicago in 1924, and Mrs. Newell states, that she did not see the deed after she gave it to her father until the spring of 1924, when she told her father to get it, as she wanted it recorded, and at that time she says, "I saw it and gave it to my father and asked him to record the deed. I believe it was in July, 1924." Newell says he took the deed to the office of the register of deeds himself, but his father-in-law was with him at the time.

Newell signed the application for the $5,000 loan which states that he is the owner of the land, and he also signed several withdrawals from hail tax indemnity, which contain the same statement. Mrs. Newell rented the land in 1923, to Martin Vasfort. Neither of the defendants ever told anyone of deed, Newell looked after the land at all times when he was in Cooperstown. Oie looked after the crop of 1918, and gave the plaintiff bank a check for $891.74. He said Andrew had two accounts, his own and a farm account, and he told Blackwell that he was to credit the check to the farm account, and that he wrote on the back of the check in pencil at the time "Account Newell farm, cr. Andrew with Borghild's farm account." Mr. Oie testifies that Borghild gave him the deed and said, " 'Dad I want you to keep this for me,' and I kept it until the 23d day of October, 1924, when I put it on record. I had a big envelope of Newell's papers. I had

different envelopes for different papers. They had an insurance policy and he had a deed to the lots. There were various instruments, and I put an envelope on each instrument. I put the deed in a separate envelope." Question, "The deed to the town lots was recorded?" Ans. "No it wasn't."

On the 27th day of August, 1924, the plaintiff recovered judgment against the defendant Newell for $1,977.20 and under execution thereon, the sheriff levied on crops raised upon said land, in the sum of $815.69, which crop was claimed by the defendant Borghild Newell, as the owner of the land under the said deed. It is the contention of the plaintiff that the deed was a fraudulent conveyance, intended·to hinder, delay, and defraud the creditors of the said A. J. Newell, that the deed was never delivered and was only intended to take effect in case the said A. J. Newell never returned from the war, that there was no consideration for the deed, that the loans were made to Newell by reason of his ownership in the land; that both defendants knew that the loans were made on the strength of Newell's ownership in the land, that the plaintiff would not have made the loans if it knew that the loan had been deeded to Mrs. Newell, and the defendants are estopped. The defendants claim that the deed was made in good faith for a valuable consideration, that it was delivered, and that the plaintiff cannot invoke estoppel, for the reason that estoppel is not pleaded. In memorandum opinion the trial court said the deed was made, exe· cuted, and delivered in good faith; the thought which was uppermost in their minds at the time was that he wanted her to have the property in the event that he would not return alive from the army. The deed was properly executed and was delivered by Newell to his wife at the time. Such facts amount to a delivery of the deed.

We agree with the trial court. There is no evidence of any condition, and if there was, such a delivery as the evidence shows in this case would pass title free of the condition. Sec. 5497, Comp. Laws 1913 provides, viz.: "A grant cannot be delivered to the grantee conditionally. Delivery to him or to his agent as such is necessarily absolute; and the instrument takes effect thereupon, discharged of any condition on which delivery was made. Ueland v. More Bros. 22 N. D. 285, 133 N. W. 543; Leonard v. Flemming, 13 N. D. 629, 102 N. W. 308. We also agree with the trial court that there was

no actual fraud in the transaction. At the time of the execution of the deed, Newell owed no one, but his father-in-law who generously canceled the debt, returned notes, and credited Newell on his books for the balance. We are of the opinion that there was a good consideration for the deed, and that it was delivered free from any condition. This brings us to the question of equitable estoppel, and it is the contention of the defendants, that that doctrine cannot be invoked by the plaintiff, for the reason, that it is not pleaded.

The complaint contains the following allegations, viz.:

"That between the 1st day of January, 1918, and the 1st day of June, 1923, the plaintiff loaned the defendant A. J. Newell large sums of money upon the strength and in the faith that the said A. J. Newell was the owner and possessor of said land, and that on or about the 17th day of February, 1922, the said defendant A. J. Newell owed the said plaintiff the sum of $4,311.69 without any security to secure the payment of the same. . . .

"That on or about the 17th day of February, 1922, the said A. J. Newell applied to one J. S. Ulland of Fergus Falls, Minnesota, appointing him as his agent to procure for him a loan of $5,000 for the term of five years and in which application the said A. J. Newell swore under oath that he was the owner of the above said premises and that the same was *inherited in 1913, and that his title thereto had never been questioned or disputed and that there were no unrecorded deeds or mortgages upon the said premises.* . . .

"That the said defendant Borghild Newell, and with full knowledge of the fact that her husband had loaned large sums of money from the plaintiff on the strength of the fact that the record showed that he was the owner in fee to the above described premises, and with full knowledge of such facts, the defendant Borghild Newell joined her husband who held himself out to the public as owner of the above said premises, in the execution and delivery of a mortgage upon said premises by virtue of the aforesaid application. . . .

"Further alleging in said complaint the plaintiff avers that said defendant Borghild Newell never had or enjoyed possession of said real estate or any part thereof and never claimed to own the same or any part thereof or any crop grown thereon prior to about the 23d day of July 1924. . . .

"That on or about the 1st day of October, 1917, the said A. J. Newell executed a certain instrument of conveyance wherein to convey said land to Borghild Newell. . . .

"That if the defendant Borghild Newell, having received any right under the purported conveyance dated on the 1st day of October 1917, kept such deed or instrument or conveyance locked in the secret archives of the defendant's home and permitted the said defendant A. J. Newell to appear to the public as being the owner and in possession of the above said premises; permitted the said defendant A. J. Newell to pose as the owner of said real estate whereby he procured large sums of money of which the defendant Borghild Newell had full knowledge, and received the benefits from; and permitted the said Andrew J. Newell to farm said premises and carry on the work of such farming operations, collecting said money therefor, and in no time until the date of the recording of said purported conveyance had the defendant Borghild Newell notified, or given any notice to the plaintiff establishing any right to said real estate, but has at all times led the plaintiff to believe that said lands belonged to Andrew J. Newell."

There are other allegations, charging fraud and fraudulent conveyance, with the intent to hinder, delay, and defraud creditors. The trial court held that the allegations were sufficient, and we agree with this conclusion.

Under the great weight of authority estoppel must be pleaded, "Nevertheless it is a rule of general application that if the allegations amount to an estoppel it is sufficient, although the estoppel is not pleaded in so many words or specified as such." "Mere informality in the pleadings will not deprive the pleader of the benefit of estoppel so long as the facts are sufficiently pleaded." 21 C. J. pp. 1248, 1249; 10 R. C. L. 844, § 149.

Section 7439, Comp. Laws 1913, abolishes all the old forms of pleading and provides that the forms of pleadings in civil actions and the rules by which the sufficiency of the pleading is to be determined are those prescribed by the code.

Section 7440, Comp. Laws 1913, states what the complaint shall contain, viz.: "A plain and concise statement of the facts constituting a cause of action without unnecessary repetition." If it contains such statement, it is sufficient, and in determining that question, the com-

plaint must receive a liberal construction. As stated by the trial court, "It is not a model complaint, but in our opinion it does state facts, which constitute equitable estoppel."

The complaint alleges that Borghild Newell, with full knowledge that her husband borrowed large sums of money from the plaintiff on the strength of his record title, kept the deed in secret archives at home, and permitted A. J. Newell to appear to the public as being the owner, and in possession of the land, that she permitted him to pose as the owner of the said land, thereby procuring large sums of money of which the defendant Borghild Newell had full knowledge and received the benefits from." Such alleged facts, if true, would constitute an equitable estoppel, and the allegation of such facts is sufficient.

The defendants contend, however, that if the complaint is sufficient, the evidence does not establish facts constituting an estoppel. There is really no dispute in the evidence. The defendants both testify that the deed was executed, delivered, and given to John Oie for safe-keeping, that he placed it in his safe, and forgot about it, that it remained there from October 1917 to July 1924, that during all that time the defendants and Oie never told anyone about the deed, and during that time the defendant A. J. Newell, with the knowledge of Borghild Newell, was borrowing money from the plaintiff, until he had borrowed approximately $6,000. The money so borrowed was expended in living expenses, and expenses attending college, and in buying office furniture and rugs.

In 1922, the defendants concluded that they were paying too high a rate of interest, and decided that they would borrow enough money on the land to pay the entire indebtedness of A. J. Newell, to the bank. Accordingly, A. J. Newell went to the bank and told Mr. Blackwell that he wanted to borrow enough money so that he could pay everything that he owed the bank. Blackwell sent Newell to Lunde, but Lunde could only get a $5,000 loan on the farm at that time. It appears that 1922 was a period of great depression and deflation. The land in question had decreased in value from $65 to $75 per acre in 1918 to $40 or $45 an acre in 1922. The loan value of the land decreased in proportion as the actual value decreased. It is clear, however, that the defendants tried to get a loan large enough to pay the entire indebtedness. They recognized the debt, and Borghild Newell

signed the note and the mortgage, as the wife of A. J. Newell. A. J. Newell signed the application for the loan as owner of the land, and exercised control and supervision over the land at all times when he was in Griggs county.

The officers of the bank testified that they knew that A. J. Newell inherited the land, that they knew the defendants ever since they were children, that they knew nothing about the transfer of the land until the deed was recorded in 1924, that the defendant A. J. Newell always spoke of this land as his land, that they got a bulletin every day from the register of deeds office showing transfers and that they relied on the record title and the actions of the defendants, and that they would not have loaned the money to the defendant if they had known of the transfer.

The defendant A. J. Newell had no other property, except the town lots which he had purchased but had not paid for, and it is reasonable and clear that if the plaintiff knew that the land had been transferred that it would not have loaned to the defendant A. J. Newell nearly $6,000, without security. That there was no intention to defraud the plaintiff on the part of the defendants does not excuse them. The failure to put the deed on record, together with the claim of ownership and the control over the property exercised by A. J. Newell, the failure to mention the transfer at any time, and the borrowing of the money, all with the full knowledge of both defendants, misled the plaintiff to its injury in loaning large sums of money, and they are estopped by their conduct, negligence, and silence. To permit them to repudiate their former acts, words, and silence would be a fraud upon the rights of the plaintiff. 21 C. J. 1060, 1061; 10 R. C. L. 689, 690. It is a well established principle, that where the true owner of property, for however short a time, allows another to appear as the owner, or as having full power of disposition, the same being in the latter's actual possession, and innocent third parties are led into dealing with such apparent owner, they will be protected. Bigelow, Estoppel, 607. The rule is expressed in the principle that wherever one of two innocent parties must suffer by the act of a third he who enables such third person to occasion the loss must sustain it. State Nat. Bank v. Flathers, 45 La. Ann. 75, 40 Am. St. Rep. 216, 12 So. 243; Turner v. Flinn, 72 Ala. 532. This principle is embodied in the maxim § 7277, Comp. Laws

1913, "When one of two innocent persons must suffer by the act of a third he by whose negligence it happened must be the sufferer." The deed is not void, but the defendants are estopped by their conduct from asserting that the title of the defendant Borghild Newell to the real property involved in this action is superior to plaintiff judgment, and the judgment as thus modified is affirmed.

BIRDZELL, Ch. J., and BURR, CHRISTIANSON, and NUESSLE, JJ., concur.